### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GREGORY SELDEN, individually and on behalf of all others similarity situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-cv-00933-CRC |
| AIRBNB, INC., | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AIRBNB, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION**

Ellen S. Kennedy (D.C. Bar. No. 461670)
Sean Marotta (D.C. Bar No. 1006494)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
ellen.kennedy@hoganlovells.com
sean.marotta@hoganlovells.com

*Attorneys for Defendant Airbnb, Inc.*

OF COUNSEL:

Neal Kumar Katyal
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109

Dated:  July 13, 2016.

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD........................................................................................................6

ARGUMENT.....................................................................................................................6

    I.        PLAINTIFF AGREED TO AIRBNB'S TERMS OF SERVICE,
              INCLUDING ITS COMPREHENSIVE ARBITRATION
              CLAUSE ..............................................................................................................7

    II.       PLAINTIFF'S CLAIMS FALL WITHIN SECTION 34'S SCOPE ...........................11

CONCLUSION.................................................................................................................13

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

Page

CASES:

*Aliron Int'l, Inc. v. Cherokee Nation Indust., Inc.*,
 531 F.3d 863 (D.C. Cir. 2008) .......................................................................................6, 7

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991) .............................................................................................................10

*Davis v. Fenton*,
 26 F. Supp. 3d 727 (N.D. Ill. 2014) ...................................................................................12

*Dowley v. Dewey Ballantine, LLP*,
 No. 05-622 (EGS), 2006 WL 1102768 (D.D.C. Apr. 26, 2006)...............................................11

*Emeronye v. CACI Int'l, Inc.*,
 141 F. Supp. 2d 82 (D.D.C. 2001) .................................................................................6, 11

*Feldman v. Google, Inc.*,
 513 F. Supp. 2d 229 (E.D. Pa. 2007) ..................................................................................9

*Fordjour v. Washington Mut. Bank*, No. C 07-1446 MMC (PR),
 2008 WL 295092 (N.D. Cal. Feb. 1, 2008) ......................................................................12

\* *Fteja v. Facebook, Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012)..................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991)................................................................................................................12

*Guadagno v. E\*Trade Bank*,
 592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................................................10

*HM DG, Inc. v. Amini*,
 162 Cal. Rptr. 3d 412 (Cal. Ct. App. 2013).......................................................................8

*Hughes v. CACI, Inc. Commercial*,
 384 F. Supp. 2d 89 (D.D.C. 2005) ....................................................................................11

\* *In re Facebook Biometric Info. Privacy Litig.*,
 __ F. Supp. 3d __, No. 15-cv-03747-JD, 2016 WL 2593853
 (N.D. Cal. May 5, 2016) ......................................................................................................9

---

\* Authorities upon which we chiefly rely are marked with an asterisk.

**TABLE OF AUTHORITIES (cont.)**

Page

*Khalatian v. Prime Time Shuttle, Inc.*,
  188 Cal. Rptr. 3d 113 (Cal. Ct. App. 2015).................................................................11

\* *Levin v. Caviar, Inc.*,
  146 F. Supp. 3d 1146 (N.D. Cal. 2015)........................................................................9

*Long v. Provide Commerce, Inc.*,
  200 Cal. Rptr. 3d 117 (Cal. Ct. App. 2016)..................................................................8

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  107 Cal. Rptr. 2d 645 (Cal. Ct. App. 2001).................................................................10

\* *Mohamed v. Uber Techs., Inc.*,
  109 F. Supp. 3d 1185 (N.D. Cal. 2015)........................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................................................7

*Nelson v. Insignia/Esg, Inc.*,
  215 F. Supp. 2d 143 (D.D.C. 2002).............................................................................11

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ......................................................................................8

*Nur v. K.F.C., USA, Inc.*,
  142 F. Supp. 2d 48 (D.D.C. 2001)...............................................................................11

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...........................................................................................8

*Ryan v. BuckleySandler, LLP*,
  69 F. Supp. 3d 140 (D.D.C. 2014)................................................................................6

*Shatteen v. Omni Hotels Mgmt. Corp.*,
  113 F. Supp. 3d 176 (D.D.C. 2015)..............................................................................7

*Shorts v. Parsons Transp. Grp., Inc.*,
  679 F. Supp. 2d 63 (D.D.C. 2010).................................................................................6

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011).........................................................................10

*Toledano v. O'Connor*,
  501 F. Supp. 2d 127 (D.D.C. 2007)...............................................................................7

**TABLE OF AUTHORITIES (cont.)**

Page

*Watson v. Gold N Diamonds, Inc.*,
    736 F. Supp. 2d 266 (D.D.C. 2010) ..................................................................................7

*Wolff v. Westwood Mgmt., LLC*,
    558 F.3d 517 (D.C. Cir. 2009) .........................................................................................6

*Zaltz v. JDATE*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) .............................................................................9

STATUTES:

9 U.S.C. § 2 ............................................................................................................................6

9 U.S.C. § 4 ............................................................................................................................6

OTHER AUTHORITY:

Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459 (2006) .........................................8

## INTRODUCTION

The question before the Court in this motion is not whether Plaintiff Gregory Selden can bring his claims for alleged race discrimination, but where and how.  Plaintiff alleges that he sought an accommodation from a third party offering it via Defendant Airbnb, Inc.'s Internet platform, and that the *third party* denied Plaintiff the accommodation because of his race.  Rather than sue the person who allegedly discriminated against him, however, Plaintiff has sued the platform on which the host's property was listed.  Plaintiff's suit directly contravenes his agreement with Airbnb to arbitrate any and all disputes arising out of or relating to the use of the platform—including its interpretation—on an individual basis.

Plaintiff agreed to Airbnb's Terms of Service at least four times when creating four separate accounts—including an account approximately two weeks before Plaintiff filed his original complaint in this case—and those Terms of Service contain an unambiguous and mandatory individual arbitration agreement.  The agreement is conspicuous and Plaintiff could not create an Airbnb account without agreeing to them.  Airbnb's sign-up process includes the admonition that by signing up, users are agreeing to Airbnb's Terms of Service, and users are provided the opportunity to review those terms prior to assenting.  Courts routinely enforce such agreements, including those considering agreements entered into through sign-up processes materially identical to Airbnb's.

What's more, Plaintiff's race discrimination claims are unambiguously and undeniably within the scope the arbitration clause.  His claims are directly tied to, and arise from, communications that allegedly took place through Airbnb's platform and relate to the use of the services by both Plaintiff and the third-party host.  The Court should therefore enforce Airbnb's Terms of Service and dismiss Plaintiff's complaint because all of Plaintiff's claims must be arbitrated before the American Arbitration Association on an individual basis.

## BACKGROUND

**Airbnb.**  Airbnb is a community marketplace for people to list, discover, and book unique accommodations around the world—online or from a mobile phone or tablet.  Those with properties to rent—known as "hosts"—create a listing on Airbnb's marketplace using its interface.  *See* Declaration of Kyle Miller ("Miller Decl."), ¶ 2; Airbnb, Terms of Service, § 1 (Miller Decl., Exhibit E).  Those looking to rent an accommodation in another city—known as "guests"—can browse Airbnb's online marketplace and communicate directly with the host to request to book a host's accommodation.  Terms of Service, §§ 5, 7.  The host then has the option to either accept or reject the requested booking.  *See id.* § 9(B).  If the host accepts the booking, the parties enter into a direct agreement—to which Airbnb is not a party—and Airbnb facilitates the guest's payment to the host.  *See id.* §§ 2, 9(B)-(C).  In return for providing these services, Airbnb collects certain fees from the host and guest pegged as a percentage of the accommodation fees determined by hosts.  *Id.* § 9(D).

Other than as described above, Airbnb has no involvement in the transaction between the guest and the host.  Although Airbnb provides a platform for independent hosts to connect with guests looking to book accommodations, the parties are solely responsible for determining whether to enter into a rental arrangement.  *See id.* §§ 2, 5.  Hosts determine the prices they charge for their accommodations, when their accommodations are available, and with whom they book.  *Id.* § 7.  Airbnb does not manage, operate, lease or own hosts' accommodations.  *Id.* § 2.  Airbnb does not operate any accommodations, has no possessory interest in any accommodation that hosts list on its site, and therefore does not and cannot transfer any interest in or license to use property.  *See id.*  Airbnb's Terms of Service make this clear, providing, in all caps, that "THE SITE, APPLICATION AND SERVICES COMPRISE AN ONLINE PLATFORM

2

THROUGH WHICH HOSTS MAY CREATE LISTINGS FOR ACCOMMODATIONS AND
GUESTS MAY LEARN ABOUT AND BOOK ACCOMMODATIONS DIRECTLY WITH
THE HOSTS. YOU UNDERSTAND AND AGREE THAT AIRBNB IS NOT A PARTY TO
ANY AGREEMENTS ENTERED INTO BETWEEN HOSTS AND GUESTS" and that Airbnb
"HAS NO CONTROL OVER THE CONDUCT OF HOSTS, GUESTS AND OTHER USERS
OF THE SITE, APPLICATION AND SERVICES OR ANY ACCOMMODATIONS."  *Id.* § 2.

**Plaintiff's Account With Airbnb and His Agreement to Arbitrate.**  In his complaint,
Plaintiff admits that he had been using the Airbnb platform since at least March 2015, and
therefore has admitted that he agreed to the Terms of Service and the arbitration clause.  *See*
Second Amended Complaint ("SAC"), Dkt. No. 11, ¶ 31.  Plaintiff created a new account on
Airbnb on May 5, 2016.  Miller Decl. ¶ 12.[1]  As part of that most-recent sign-up, Plaintiff was
required to—and did—agree to Airbnb's current Terms of Service as follows.  When he created
his account, Plaintiff was confronted with a "sign up" button.  *Id.* ¶¶ 5-7 & Exhibit A.  Below the
sign-up button was text stating that "[b]y clicking Sign Up, you agree to Airbnb's Terms of
Service, Payments Terms of Service, Privacy Policy, Guest Refund Policy, and Host Guarantee
Terms."  *Id*.  The underlined text is a blue hyperlink to each of the referenced policies, meaning
that the user can access the policies by clicking on the hyperlink.  *Id.*  Plaintiff clicked "Sign Up"
and thereby agreed to Airbnb's current Terms of Service.  *Id.*  These Terms of Service are

---

[1] According to both Plaintiff's complaint and Airbnb's records, Plaintiff created three other
Airbnb accounts, including one under his own name and two under false names.  SAC ¶¶ 31, 40-
43; Miller Decl. ¶¶ 8, 11-12.  For purposes of this motion, Plaintiff's most-recent account is the
only relevant one, because it is the account through which he agreed to Airbnb's current Terms
of Service.  *See* Miller Decl. ¶ 12.  Nevertheless, the arbitration provisions in all of the Terms of
Service in effect while Plaintiff was active on the platform are materially identical.  *Compare*
Miller Decl., Exhibit B, pp. 15-16, *and id.* Exhibit D, pp. 33-34, *with id.*, Exhibit E, § 34.

publicly available from Airbnb's website at www.airbnb.com/terms; Plaintiff did not need to create an account to review them.  *See* Miller Decl. ¶ 15.

Airbnb's Terms of Service begin with a bold, all-caps warning that "**SECTION 34 OF THESE TERMS OF SERVICE CONTAINS AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER. IT AFFECTS HOW DISPUTES WITH AIRBNB ARE RESOLVED. BY ACCEPTING THESE TERMS OF SERVICE, YOU AGREE TO BE BOUND BY THIS ARBITRATION PROVISION. PLEASE READ IT CAREFULLY.**"  Terms of Service, pmbl.  Section 34, in turn, is a comprehensive, detailed individual arbitration agreement. Among Section 34's provisions:

- Airbnb and the user "agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Services or use of the Site, Application or Collective Content"—except for certain intellectual-property disputes—"*will be settled by binding arbitration*."  Terms of Service, § 34 (emphasis added).

- Airbnb and the user "each waiv[e] the right to a trial by jury or to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney-general action, or any other representative proceeding."  *Id.*

- The arbitration will be administered by the American Arbitration Association in accordance with the Commercial Arbitration Rules and Supplementary Procedures for Consumer Related Disputes in effect at the time of the arbitration.  *Id.*

- The arbitrator will be a retired judge or a California-licensed attorney mutually agreed upon from the American Arbitration Association's roster of arbitrators, or, if the parties cannot agree, chosen by the Association.  The arbitrator will render a written

4

decision setting forth the "essential findings and conclusions upon which the arbitrator based the award." *Id.*

- The arbitration will be conducted in the county in which the user resides, and—if the user's claim is for under $75,000—Airbnb will pay all arbitration fees unless the arbitrator determines the user's claim was frivolous or brought for an improper purpose. The user is entitled to attorney's fees to the extent permitted by applicable law, but Airbnb waives any claim to attorney's fees, even if permitted by applicable law. *Id.*

**Plaintiff's Suit.**  Disregarding his agreement to Section 34, Plaintiff brought this suit. According to Plaintiff's most recent complaint, filed on June 27, 2016, a third-party host using Airbnb's listing service denied accommodations to Plaintiff, allegedly because of his race.  SAC ¶¶ 28-52.  Plaintiff seeks to hold Airbnb liable for the host's alleged discriminatory conduct by asserting that the host was Airbnb's "agent[] or employee[], representative[] or servant[]," *id.* ¶¶ 35, 53-81, notwithstanding the express provision in the Terms of Service stating that a host's "RELATIONSHIP WITH AIRBNB IS LIMITED TO BEING A MEMBER AND AN INDEPENDENT, THIRD-PARTY CONTRACTOR, AND NOT AN EMPLOYEE, AGENT, JOINT VENTURER OR PARTNER OF AIRBNB FOR ANY REASON."   Terms of Service, § 2.  In particular, Plaintiff claims that Airbnb is liable to him under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Fair Housing Act.  SAC ¶¶ 53-81.  Plaintiff also claims that others have experienced similar discrimination from other hosts on Airbnb's platform, and he seeks to represent a class of similarly situated users. *Id.* ¶¶ 1-18.

**LEGAL STANDARD**

Under Section 4 of the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  A motion to compel arbitration "is treated 'as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.' " *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 143 (D.D.C. 2014) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indust., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). The Court therefore applies the summary-judgment standard to the question of whether the parties have agreed to arbitrate; it grants a motion to compel if "the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Shorts v. Parsons Transp. Grp., Inc.*, 679 F. Supp. 2d 63,  66 (D.D.C. 2010) (citation omitted).   And where "all of plaintiff's claims are subject to arbitration, dismissal of th[e] action is within the discretion of the Court and is appropriate." *Emeronye v. CACI Int'l, Inc.*, 141 F. Supp. 2d 82, 88 (D.D.C. 2001); *see also Shorts*, 679 F. Supp. 2d at 66-67 (calling this rule "well settled").

**ARGUMENT**

Under the Federal Arbitration Act, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In applying the Act, this Court applies a strong presumption in favor of arbitration; "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Wolff*

*v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009) (quoting *Moses H. Cone*

*Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Under the standards that apply in this Circuit, arbitration should be compelled upon a

finding that (1) the parties have agreed to arbitrate and (2) the claims in the suit are within the

scope of the arbitration agreement. *Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266, 269

(D.D.C. 2010). In determining whether these requirements have been met, the Court "appl[ies]

ordinary state law contract principles." *Id.* Because Airbnb's Terms of Service have a

California choice-of-law clause (Terms of Service, § 33), California law governs the answers to

these questions. *See Aliron Int'l*, 531 F.3d at 865-866 (applying Oklahoma state law to whether

parties agreed to arbitrate because the contract contained an Oklahoma choice-of-law clause).

Airbnb has satisfied both prerequisites. Airbnb's records demonstrate that Plaintiff

agreed to be bound by the arbitration clause in Airbnb's Terms of Service when he signed up to

use Airbnb and accessed the Airbnb platform. Moreover, because Plaintiff's claims against

Airbnb arise directly from his use of the Airbnb platform, they fall squarely within the arbitration

clause. The Court should therefore compel arbitration and dismiss Plaintiff's case.

## I.   PLAINTIFF AGREED TO AIRBNB'S TERMS OF SERVICE, INCLUDING ITS COMPREHENSIVE ARBITRATION CLAUSE.

It is well established that parties who mutually manifest their assent to a contract

including an arbitration provision are bound by the provision. *See*, *e.g.*, *Shatteen v. Omni Hotels*

*Mgmt. Corp.*, 113 F. Supp. 3d 176, 179 (D.D.C. 2015); *Toledano v. O'Connor*, 501 F. Supp. 2d

127, 141-142 (D.D.C. 2007). Such assent here is conclusively demonstrated by Plaintiff's

agreement to Airbnb's Terms of Service, including Section 34's comprehensive individual

arbitration clause, when he created an Airbnb account. For although "new commerce on the

Internet has exposed courts to many new situations, it has not fundamentally changed the

principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)).

The "touchstone of contract" is "[m]utual manifestation of assent, whether by written or spoken word or by conduct." *Id.* (citation omitted; brackets in original); *accord Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 122 (Cal. Ct. App. 2016). Mutual assent, in turn, "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *HM DG, Inc. v. Amini*, 162 Cal. Rptr. 3d 412, 418 (Cal. Ct. App. 2013) (citations omitted).

Airbnb's sign-up process presents what is often referred to as a "clickwrap" agreement, where a user agrees to be contractually bound by terms of service by clicking on a box or button. *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1197 (N.D. Cal. 2015). Courts "regularly" enforce clickwrap agreements, *id.* (citing Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 459-460 (2006)), and for good reason. By affirmatively clicking on a button to register for a platform after being warned that doing so constitutes agreement to the platform's terms of service, the user manifests his agreement to the terms of service. *See Nguyen*, 763 F.3d at 1176-77 (there is mutual assent to terms in a clickwrap agreement where "the user is required to affirmatively acknowledge the agreement before proceeding with use" of the service); *Mohamed*, 109 F. Supp. 3d at 1197 (same).

Consequently, courts have uniformly upheld clickwrap agreements in sign-up scenarios materially identical to Airbnb's. For example, Facebook's sign-up page, like Airbnb's, has a notice below its "Sign Up" button that states "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and hyperlinks from that text to the terms of

service themselves.  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012); *see also*

*In re Facebook Biometric Info. Privacy Litig.*, __ F. Supp. 3d __, No. 15-cv-03747-JD, 2016 WL

2593853, at *8 (N.D. Cal. May 5, 2016).  Two courts have held that by clicking "sign up" in the

face of that conspicuous notice, the user agreed to, and was bound by, Facebook's terms of

service.  *Fteja*, 841 F. Supp. 2d at 841; *see also Facebook Biometric*, 2016 WL 2593853, at *8.

Because the user "had to take some action—a click of a dual-purpose box—from which assent

might be inferred," the user was bound by the hyperlinked terms of service.  *Facebook*

*Biometric*, 2016 WL 2593853, at *8; *see also Fteja*, 841 F. Supp. 2d at 838 (agreement by

clicking "Sign Up" button was valid because "the user must do something else—click 'Sign

Up'—to assent to the hyperlinked terms").

    So too here.  Airbnb, like Facebook, has users assent to its Terms of Service through a

"Sign Up" button combined with conspicuous text hyperlinking to Airbnb's Terms of Service

and a warning that clicking "Sign Up" constitutes consent to the Terms of Service.  Miller Decl.

¶¶ 6-7 & Ex. A.  Airbnb's records confirm that Plaintiff clicked "Sign Up" for each of his four

accounts, thereby assenting to the Airbnb Terms of Service, including the arbitration clause.  *Id.*

¶¶ 8, 11-12.[2]  It makes no difference that the Terms of Service were hyperlinked rather than

displayed on the Sign Up screen, because—in both the virtual and real worlds—courts routinely

enforce contracts whose terms are readily available to the contracting parties, even when they are

not set forth on the same page where the customer gives his assent.  *See Levin v. Caviar, Inc.*,

---

[2] The fact that it is impossible to use Airbnb without first going through the account-creation
process (Miller Decl. ¶ 4) further forecloses any argument that Plaintiff personally did not agree
to Airbnb's Terms of Service.  *See Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013)
(defendant proved plaintiff assented to terms of service by demonstrating that "plaintiff could not
have become a member . . . without first agreeing to the website's Terms of Service"); *Feldman
v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (defendant proved plaintiff assented to
terms of service by demonstrating that "[i]f the user did not agree to all of the terms, he could not
have activated his account").

146 F. Supp. 3d 1146 (N.D. Cal. 2015) ("[C]ourts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.' ") (citation omitted); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("[C]lickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient."); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 590 (1991) (upholding venue-selection clause based on warning on a ticket that referred the ticker holder to separate pages containing the actual contract terms).

It is equally clear that by agreeing to Airbnb's Terms of Service, Plaintiff agreed to Section 34's comprehensive arbitration clause.  Although parties are not bound to terms that are not "called to the[ir] attention," *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 651 (Cal. Ct. App. 2001), Airbnb's arbitration clause is far from obscure.  The very first clause in the Terms of Service is a bold, all-caps notice that "**IF YOU RESIDE IN THE UNITED STATES, PLEASE NOTE: SECTION 34 OF THESE TERMS OF SERVICE CONTAINS AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER. IT AFFECTS HOW DISPUTES WITH AIRBNB ARE RESOLVED. BY ACCEPTING THESE TERMS OF SERVICE, YOU AGREE TO BE BOUND BY THIS ARBITRATION PROVISION. PLEASE READ IT CAREFULLY.**"  Terms of Service, pmbl.  Under any reasonable view, the existence of Airbnb's arbitration agreement was "clear and reasonably conspicuous."  *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008).  Plaintiff is therefore bound by Section 34's arbitration clause.

## II.    PLAINTIFF'S CLAIMS FALL WITHIN SECTION 34'S SCOPE.

Plaintiff's claims also unquestionably fall within the scope of Section 34's

comprehensive arbitration provision.  Section 34 provides that for users like Plaintiff that live in

the United States, the user and "Airbnb agree that any dispute, claim or controversy *arising out*

*of or relating to* these Terms or the breach, termination, enforcement, interpretation or validity

thereof, *or to the use of the Services or use of the Site, Application or Collective Content*"—

except for certain intellectual-property disputes—"will be settled by binding arbitration."  Terms

of Service, § 34 (emphasis added).

These terms are unambiguous and they cover all of Plaintiff's statutory discrimination

claims.  When a contract uses the phrase "arising out of or relating to," it is "proper to interpret

the agreement broadly."  *Dowley v. Dewey Ballantine, LLP*, No. 05-622 (EGS), 2006 WL

1102768, at *7 (D.D.C. Apr. 26, 2006); *see also Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal.

Rptr. 3d 113, 119 (Cal. Ct. App. 2015) ("The language 'arising out of or relating to' as used in

the parties' arbitration provision is generally considered a broad provision.").  And in applying

the broad sweep of that phrase, this Court has frequently required parties to arbitrate

discrimination claims that are related to their relationships with companies.  *See Hughes v.*

*CACI, Inc. Commercial*, 384 F. Supp. 2d 89, 97-98 (D.D.C. 2005); *Nelson v. Insignia/Esg, Inc.*,

215 F. Supp. 2d 143, 158 (D.D.C. 2002); *Emeroyne*, 141 F. Supp. 2d at 83-88; *Nur v. K.F.C.,*

*USA, Inc.*, 142 F. Supp. 2d 48, 51 (D.D.C. 2001).  Plaintiff should be similarly required to

submit his discrimination claims to arbitration.  His claims "relate to" his use of Airbnb's

platform and services; indeed, Plaintiff alleges he was discriminated against through

communications that took place solely through Airbnb's platform and through the use of

Airbnb's services on the platform.  *See* SAC ¶¶ 29-52.

It makes no difference that Plaintiff's discrimination claims are statutory.  The Supreme

Court has held that "[i]t is by now clear that statutory claims"—even statutory discrimination

claims—"may be the subject of an arbitration agreement."  *Gilmer v. Interstate/Johnson Lane*

*Corp.*, 500 U.S. 20, 26 (1991); *id.* at 26-35 (requiring plaintiff to arbitrate an age-discrimination

claim).  And as a result, courts have often required parties to arbitrate Section 1981 and Fair

Housing Act claims like Plaintiff's.  *See*, *e.g.*, *Davis v. Fenton*, 26 F. Supp. 3d 727, 742-743

(N.D. Ill. 2014) (ordering arbitration of Section 1981 and Fair Housing Act claims); *Fordjour v.*

*Washington Mut. Bank*, No. C 07-1446 MMC (PR), 2008 WL 295092, at *1-*3 (N.D. Cal. Feb.

1, 2008) (same).  Plaintiff therefore must arbitrate all of his claims exactly as Section 34

provides:  In an arbitral forum on an individual basis.

**CONCLUSION**

For the foregoing reasons, Airbnb's motion should be granted and Plaintiff's complaint

should be dismissed.  In the alternative, the Court should stay Plaintiff's action pending the

completion of arbitration as provided for in Airbnb's Terms of Service.

Respectfully submitted,

/s/ Ellen S. Kennedy
Ellen S. Kennedy (D.C. Bar. No. 461670)
Sean Marotta (D.C. Bar No. 1006494)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
ellen.kennedy@hoganlovells.com
sean.marotta@hoganlovells.com

OF COUNSEL:

Neal Kumar Katyal
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109

*Attorneys for Defendant Airbnb, Inc.*

Dated:  July 13, 2016.

**CERTIFICATE OF SERVICE**

I certify that on July 13, 2016, the foregoing was electronically filed through this Court's

CM/ECF system, which will send a notice of filing to all counsel, who are registered users.

/s/ Ellen S. Kennedy