UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY SELDEN,<br><br>              Plaintiff,<br><br>      v.<br><br>AIRBNB, INC.,<br><br>              Defendant. | Case No. 16-cv-933 (CRC) |

**OPINION AND ORDER**

Plaintiff Gregory Selden sued Airbnb for racial discrimination after one of the company's "hosts" declined to rent him a room. Airbnb moved to compel arbitration of Selden's claims under the online adhesion contract that Selden entered into by creating a user account. Controlling precedent required the Court to grant the motion, and an arbitrator ultimately ruled in Airbnb's favor. Selden now seeks to vacate the arbitrator's ruling on the ground that the arbitrator denied him the opportunity to depose Airbnb witnesses in discovery and failed to consider an expert report. Finding that Selden has not shouldered the heavy burden required to vacate an arbitration decision, the Court will deny his motion and dismiss the case.

**I.    Background**

    A.   Federal Court & the Motion to Compel

Gregory Selden signed up with Airbnb to find a place to stay for a weekend trip to Philadelphia. Airbnb enables "guests" like Selden to rent short-term accommodations from a "host," who may offer an entire property or an individual room in their home. Selden created a guest profile on Airbnb's web platform, uploaded a then-required photograph (which revealed

that he is African American), and contacted a host about a promising listing.  But the host responded that the listing was no longer available.  Smelling a rat, Selden created a second account under a fake name, uploaded a photograph of a white person, and contacted the same host about the same listing for the same weekend.  The host readily agreed to rent his room.

Armed with this circumstantial evidence of racial discrimination, Selden filed suit against Airbnb on behalf of himself and fellow African-American travelers who have reported similar treatment using Airbnb.  He alleged that Airbnb violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, which prohibits race discrimination in public accommodations; the Civil Rights Act of 1866, 42 U.S.C. § 1981, which prohibits race discrimination in the formation of contracts; and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, which prohibits race discrimination in the sale or rental of housing.  Among other things, Selden challenged Airbnb's policies requiring guests to upload a photograph of themselves and to use their true name, both of which he claims enables its hosts to discriminate based on race.

Airbnb moved to compel arbitration.  It argued that when Selden created a user account, he agreed to the company's Terms of Service, including a clause requiring all disputes to be resolved on an individual basis by an arbitrator.  The Court—following clearly established law—held that Selden had agreed to settle disputes through arbitration, that he had relinquished his right to mount a representative action, and that his statutory claims were arbitrable.  The Court thus compelled arbitration and stayed the case pending a final award.  See Selden v. Airbnb, Inc., No. 16-cv-933, 2016 WL 6476934, at *9 (D.D.C. Nov. 1, 2016).

B. The Arbitration

Selden then filed an arbitration demand with the American Arbitration Association.  The AAA, which Airbnb's Terms of Service required Selden to use, is a non-profit organization that

2

administers arbitration proceedings.  It provides standard procedural rules for arbitrations, vets arbitrators for experience and impartiality, and matches parties seeking to arbitrate with qualified arbitrators if they do not agree on one themselves.  Here, the parties agreed to proceed under the AAA's Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes.[1]  The process is similar to federal court:  Parties may file preliminary motions to dismiss.  If they are denied, limited discovery occurs.  After discovery, the parties have the option to file dispositive motions, similar to summary judgment practice, or to proceed to a fact-finding hearing akin to a trial.

As for discovery, the agreed-upon rules provide that "[t]he arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses."  AAA, Commercial Arbitration Rules, Commercial Arbitration Rules and Mediation Procedures (effective Oct. 1, 2013), Rule 22(a).  The rules do not explicitly contemplate depositions.[2]

---

[1] Airbnb quotes from the AAA's *Consumer* Arbitration Rules, see Opp'n 6, but its own Terms of Service did not choose those rules.  The Court will refer to the arbitration rules agreed to by the parties, namely the AAA's Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes.  See Terms of Service ¶ 34, ECF No. 13-7.

[2] The AAA's Commercial Arbitration Rules provide for additional procedures for "large, complex commercial disputes," which explicitly give arbitrators discretion "[i]n exceptional cases . . . upon good cause shown and consistent with the expedited nature of arbitration" to "order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case."  AAA, Procedures for Large, Complex Commercial Disputes, Commercial Arbitration Rules and Mediation Procedures (effective Oct. 1, 2013), Rule 3(f).  This provision could be read to imply that depositions are generally *not* warranted or allowed for run-of-the-mill commercial arbitrations arguably like this one.

Once in front of an arbitrator, Airbnb filed a motion to dismiss, which the arbitrator denied. The arbitrator then provided the parties an opportunity to engage in limited discovery consistent with the discovery procedures outlined in the rules; after a failed mediation attempt, he permitted both sides to file up to fifteen document requests and required each party to file a witness list. Welborn Decl. ¶ 5, Exh. 2, ECF No. 45-1. According to a declaration submitted by Airbnb's counsel, "the arbitrator stated that he was willing to consider renewed requests for additional discovery following the completion of document discovery," which Airbnb claims Selden failed to make prior to the close of discovery. Welborn Decl. ¶ 6–9. Selden counters that the arbitrator repeatedly denied his requests to depose corporate representatives at Airbnb, Mot. to Vacate 2–3, but he does not provide any supporting evidence that he renewed his request after the arbitrator gave him the opportunity to do so.

After the close of discovery, Airbnb filed a dispositive motion arguing that neither its platform nor the host's listing—a room in a single-family home—is a "place of public accommodation" under Title II, that it was not a party to the unexecuted contract between the host and Selden, and that it did not have an agency relationship with the host. Taken together, these conclusions would preclude Selden from succeeding on his racial discrimination claims as a matter of law.[3] Selden renewed his request for depositions at the hearing on the dispositive motion, but the arbitrator denied the request at that late stage. Welborn Decl. ¶ 12–13.

---

[3] Title II only applies to "places of public accommodations. See, e.g., Kalantar v. Lufthansa German Airlines, 402 F. Supp. 2d 130, 139 (D.D.C. 2005) (dismissing a Title II claim because "an airline" is not a "place of public accommodation"). Section 1981 only applies to parties to—and perhaps third-party beneficiaries of—a contract. Cf. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006) (holding that § 1981 requires the plaintiff to be a party or to have rights under the would-be contract). And the FHA exempts single-family homes rented by the owner. 42 U.S.C. § 3603(b)(1).

The arbitrator agreed with Airbnb and dismissed the arbitration, finding "no triable issues of fact." In re Selden v. Airbnb, Inc., No. 01-17-0006-0859, Final Decision 1 (May 30, 2019) ("Final Decision"), ECF No. 43-8.  In reaching that conclusion, the merits of which are not before the court, the arbitrator made three sets of dispositive factual and legal determinations: *First*, the arbitrator found that the listing in question was not a "public accommodation" under Title II because the host was seeking to rent out a room in a single-family residence where he lived with his wife.  Final Decision 2.  Therefore, Selden could not recover under Title II for the host's actions.  *Second*, the arbitrator found that Airbnb's platform is not a "public accommodation" either, which meant that Selden could not proceed under Title II based on any conduct or policy by Airbnb.  Final Decision 3.  Separately, the arbitrator accepted Airbnb's assertion that it revoked its photo requirement and found that the true-name requirement was, for reasons he did not explain, a "non-issue."  Final Decision 1–2.  *Finally*, the arbitrator found that Airbnb was not a party to the unexecuted contract between Selden and the host.  He also found that the host was not acting as Airbnb's agent because (a) the host could not bind Airbnb, (b) they were not in a fiduciary relationship, and (c) Airbnb lacked sufficient control over the host's activities.  Therefore, he decided that Airbnb is not liable for any discrimination by the host under either contract or agency theories of liability.  Final Decision 2.

C. Back to Federal Court

Once the arbitrator issued his decision, Selden returned to federal court seeking to vacate the ruling.  His primary contention is that the arbitrator failed to provide for adequate discovery to protect his substantive rights.  He also claims that the arbitrator refused to consider the testimony and report of an expert witness that he offered in support of his disparate-impact theory of discrimination.  The Court holds that Selden has not met his burden to warrant

5

disturbing the arbitrator's decision; therefore, the Court will deny his motion to vacate the award and dismiss the case.

## II. Standard of Review[4]

The party wishing to vacate an arbitration award has an exceedingly high burden. See Al-Harbi v. Citibank, N.A., 85 F.3d 680, 683 (D.C. Cir. 1996) (describing the burden as "onerous"); Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2006) (explaining that the burden is a "heavy one"). The FAA establishes a national policy in favor of enforcing arbitration awards. Preston v. Ferrer, 552 U.S. 346, 353 (2008). Through the FAA, Congress "specifically directed [courts] to respect and enforce . . . parties' chosen arbitration procedures." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018). Indeed, "Congress requires enforcement even when arbitration proceedings do not provide the full process protections that courts provide because the 'primary purpose' of the [FAA] is not to turn arbitration panels into private federal courts but to 'ensure that private agreements to arbitrate are enforced according to their terms.'" Rep. of Argentina v. AWG Grp. Ltd., 894 F.3d 327, 332 (D.C. Cir. 2018) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010)).

A court can set aside an arbitration decision only if "the proceeding deviated significantly from the [FAA]'s standards of fair adjudication," id., which occurs "only in very unusual circumstances." First Optics of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995); accord Hall St.

---

[4] Selden assumes that California law applies, see Mot. to Vacate 4–7, but the FAA and federal law controls whether the Court may vacate an arbitral award. See Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 582 (2008) (explaining that the FAA provides the mechanisms for enforcing, vacating, or modifying an arbitral award); see also Terms of Service ¶ 34, ECF No. 13-7 ("[T]he Federal Arbitration Act governs the interpretation and enforcement of this provision.").

Assocs., 552 U.S. at 586 (holding the FAA only "address[es] egregious departures from the parties' agreed-upon arbitration . . . ."). This makes sense. Congress determined that arbitration allows for "quicker, more informal, and often cheaper resolution for everyone involved." Epic Sys. Corp., 138 S. Ct. at 1621. The ability to easily disturb an arbitral award would encourage losing parties to always challenge their arbitration in court, which would run counter to arbitration's "essential virtue" of avoiding the length and expense of litigation. Rep. of Argentina, 894 F.3d at 333 (quoting Hall St. Assocs., 552 U.S. at 588).

### III. Analysis

The FAA provides four grounds on which a court may vacate an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of the[] [parties];

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The D.C. Circuit provides a fifth: A court may vacate an award if it was entered in "manifest disregard of the law." See LaPrade v. Kidder, Peabody & Co., 246 F.3d 702, 706 (D.C. Cir. 2001).[5] Selden contends the arbitrator is "guilty of misconduct . . . in

---

[5] It is an open question whether the "manifest disregard" standard survives Hall St. Assocs., 552 U.S. at 584, where the Supreme Court held that § 10 "provide[s] the FAA's exclusive grounds for expedited vacatur." See Affinity Fin. Corp. v. AARP Fin., Inc., 468 Fed. App'x 4, 5 (D.C. Cir. 2012) (assuming without deciding that the "manifest disregard of the law" standard still exists); Regnery Pub., Inc. v. Miniter, 368 Fed. App'x 148 (2010) (same). The Court need not wade into this thicket because even if valid, this standard does not apply in this

refusing to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3), by limiting discovery in such a way as to prevent him from presenting that evidence and by ignoring his expert witness and report.

Discovery in arbitration need not—indeed, should not—precisely mirror discovery in federal court. An arbitration need only "provide[] for more than minimal discovery" for a court to compel a plaintiff to arbitrate a statutory claim. Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997). Indeed, "by arbitrating their disputes, [parties] lose . . . the extensive discovery provided by the courts." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 259 n.18 (1987). Airbnb maintains that courts may not review the discovery taken in arbitration at all because the FAA does not explicitly permit a court to vacate an award on that basis. Opp'n 5 (citing 9 U.S.C. § 10). Neither side presents caselaw directly addressing this question, but the Court reads § 10(a)(3) to encompass a review—albeit a limited one—of an arbitrator's discovery decisions. For example, if an arbitrator completely denied any opportunity for discovery—regardless of what the arbitration rules allowed—and made his decision based solely on disputed facts, the denial of discovery could be tantamount to "refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). The Court need not resolve this question, however, because even assuming § 10(a)(3) allows a court to vacate an award based on unduly restricted discovery, Selden has failed to meet his heavy burden to show that the alleged error here requires vacatur. See Rep. of Argentina, 894 F.3d at 332 (holding that

---

case. Selden does not argue that the arbitrator disregarded the law; rather, he contends that the discovery process was deficient and prevented him from presenting pertinent and material evidence.

the movant must show that "the proceeding deviated significantly from the [FAA]'s standards of fair adjudication").

First, the Court finds that Selden did not timely request the depositions of Airbnb representatives, the denial of which he now claims requires vacatur. Thus, the error is his, not the arbitrator's. According to the facts before the Court, Selden first requested depositions at an initial discovery teleconference, but the arbitrator delayed discovery until after the parties attempted an agreed-upon mediation. Welborn Decl. ¶ 4, Exh. 1. After the mediation failed, the record shows that Selden renewed his request for depositions at a second discovery teleconference. Welborn Decl. ¶ 5–6. The arbitrator denied the request and only ordered document discovery, Welborn Decl. ¶ 5, Exh. 2, but he added that "he was willing to consider renewed requests for additional discovery following the completion of document discovery." Welborn Decl. ¶ 6. Selden's counsel, noting this opportunity to renew his request for depositions, explicitly "reserve[d] the right" to do so "prior to the close of discovery." Welborn Decl. ¶ 6, Exh. 3. Nothing in the record establishes that Selden renewed his request before discovery closed, and counsel for Airbnb has averred that he did not. Welborn Decl. ¶ 9. Selden's counsel declares that, during a post-discovery hearing on Airbnb's dispositive motion, he indicated to the arbitrator that he would have taken depositions had he been allowed to do so, Emejuru Decl. ¶ 2, ECF No. 43-7, but that does not establish that he renewed his request for depositions after he reserved the right to do so and before discovery closed. The weight of the evidence in the record thus points to the conclusion that Selden failed to renew his request for depositions when he was invited to do so, which is fatal to his contention that the arbitrator "refus[ed] to hear . . . evidence" from Airbnb representatives. See 9 U.S.C. § 10(a)(3).

Even if the arbitrator did unreasonably deny a timely request for depositions, Selden has not met his burden to establish grounds to vacate the arbitrator's decision. To succeed, Selden must show that he was prejudiced by the arbitrator's actions. <u>Lessin v. Merrill Lynch Fenner</u>, 481 F.3d 813, 818 (D.C. Cir. 2007) (holding that when an arbitrator "refus[es] to hear pertinent and material evidence," a federal court may vacate the award "only if" the refusal "prejudices the rights of the parties to the arbitration proceedings"). He has not done so. Selden has not shown how the three factual issues decided by the arbitrator that disposed of his case turned on any evidence Selden may have learned from deposing Airbnb's corporate representatives:

*Host's Home Not a Place of Public Accommodation.* Facts about the host's home were presumably contained in the written submissions, and Selden has not identified any further evidence that Airbnb's witnesses could have provided beyond what the written discovery revealed. Selden also could have done an independent investigation to uncover other facts regarding the host's home.

*Airbnb's Platform Not a Place of Public Accommodation.* Whether Airbnb's platform constitutes a place of public accommodation could be determined based on the contents of its website and the Terms of Use agreement. Selden has not demonstrated why it was necessary to depose Airbnb representatives, even though that option may have been available in federal court.

*Airbnb Not a Party to Contracts Between Hosts and Guests and Not in an Agency Relationship with the Host.* The nature of the relationship between Airbnb and its hosts is evident in the various agreements between them cited by the arbitrator. Final Decision 2. Again, Selden has not indicated what more information about the company's relationship with its hosts he would have learned from deposing Airbnb executives.

In sum, Selden has not identified any facts that he could have obtained through the depositions that would have created a meaningful dispute on any of these three dispositive issues.  His primary contentions are that he would have explored whether Airbnb in fact discontinued its photo policy for good, a question the arbitrator seemed to just take Airbnb's word for, and that he would have further tested the relationship between Airbnb and its hosts.  But whether Airbnb discontinued its photo policy is irrelevant to the arbitrator's final decision given that he found that Airbnb's platform is not a place of public accommodation, and, as noted above, Selden does not specifically identify any information he could have gleaned about Airbnb's relationship with the host beyond what is evident in their agreements.  Accordingly, Selden has not shown that he was prejudiced by the arbitrator's alleged refusal to allow depositions.

Finally, Selden argues that the arbitrator ignored his expert witness and report.  According to Selden, his expert explained why Airbnb's true-name requirement disproportionately affects African American guests seeking accommodations through the platform, but the Final Decision dismissed the name policy as a "non-issue" without any analysis.  Final Decision 1.  Again, Selden has the burden to show that the arbitrator "refus[ed] to hear" the evidence, which he has not done.  See 9 U.S.C. § 10(a)(3).  Although the arbitrator did not mention the expert report or its conclusions in his Final Decision, the failure to do so does not necessarily mean that the he refused to hear the evidence.  The arbitrator permitted Selden to submit the report, and it was among the evidence before him as he considered the case.  See Welborn Decl. ¶ 11, Exh. 5 (email from Selden's counsel to the arbitrator attaching the expert report).  Selden has also not met his burden to show that he was prejudiced by the arbitrator's failure to mention the expert report.  See Lessin, 481 F.3d at 818.  Because the arbitrator decided

11

that Airbnb's platform is not a place of public accommodation, it could not be found liable under Title II for the true-name requirement even if it creates a disparate impact on African-American Airbnb guests. Therefore, the arbitrator had no need to discuss the expert report, and his failure to mention it did not amount to prejudicial error.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [EFC No. 43] Plaintiff's Motion to Vacate Arbitration Award is DENIED. It is further

**ORDERED** that the case is dismissed.

This is a final appealable order.

**SO ORDERED**.

                                                                  _____
                                                                  CHRISTOPHER R. COOPER
                                                                  United States District Judge

Date:  November 27, 2019